IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SANDRA NELSON,<br><br>               Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>               Defendant. | 4:19CV3097<br><br>**MEMORANDUM AND ORDER** |

Plaintiff, Sandra Nelson, seeks review of the decision by Defendant, Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner"), denying her application for disability insurance benefits under Title II of the Social Security Act ("SSA"). *See* 42 U.S.C. § 423(d)(1)(A). For the reasons explained below, the Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

On September 27, 2016, Plaintiff filed an application for benefits, alleging disability beginning January 8, 2016, from high blood pressure, diabetes mellitus, and left ankle pain. (T53, 55, 64).[1] Plaintiff's application was initially denied on April 7, 2017, and upon reconsideration on June 1, 2017. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 11, 2018. (T13). Plaintiff was represented by counsel during the hearing. Plaintiff and an impartial vocational expert, Jennifer Maginnis, testified at the hearing. (T30). The ALJ issued an unfavorable decision on November 9, 2018. (T24). The Appeals Council denied Plaintiff's Request for Review of the ALJ's decision on July 29, 2019. (T1). Plaintiff timely filed this action to set aside the Commissioner's decision. (Filing No. 1).

## FACTUAL BACKGROUND

Plaintiff was 57-years old at the time of the alleged onset date of her disability, and 59-years old as of the date the ALJ issued the decision. (T36, 53). Plaintiff worked as a housecleaner

---
[1] Pinpoint citations to the transcript of the Administrative Record ("T") shall be to the consecutively numbered pages in the record rather than to the CM/ECF filing number.

from 2010 to 2012, and as a cook at a grocery store from 2014 to January 2016, until the store closed. (T42-43, 172). Plaintiff testified that her job duties at the grocery store included cooking lunch, taking and filling orders, cleaning tables, and loading the dishwater. Plaintiff testified she was able to perform her job at the grocery store because she was able to sit down during work to rest her ankle when she needed to. After the grocery store closed, Plaintiff worked as a cook at a nursing home for approximately four months beginning January 8, 2016, but began "having trouble" because she was told she could no longer sit to prepare meals. (T43-44). Plaintiff testified she feels she can no longer work as a cook because "standing on my foot for more than a couple of hours" makes her ankle swell, and although sitting down helps, employers do not permit her to sit to work. (T44-45). Plaintiff was not working at the time of the hearing. (T38).

## THE ALJ's DECISION

The ALJ evaluated Plaintiff's claim using the "five-step" sequential analysis prescribed by the Social Security Regulations.[2] See 20 C.F.R. § 404.1520(a)(4). In doing so, the ALJ found that Plaintiff met the insured status requirements of the SSA through September 30, 2021, and that Plaintiff had not engaged in substantial gainful activity since January 8, 2016. The ALJ found Plaintiff had severe impairments of history of left ankle fracture with surgery, obesity, and diabetes mellitus, and that those impairments significantly limit her ability to perform basic work activities. (T16). The ALJ formulated Plaintiff's RFC as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is able to perform work that requires no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling. She must avoid concentrated exposure to cold and even moderate exposure to vibrating

---

[2] The Social Security Administration uses a five-step process to determine whether a claimant is disabled:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)(citing 20 C.F.R. §§ 404.1520(a) and 416.920(a)).

> equipment and to hazards such as dangerous heights or machinery. Finally, the
> claimant is able to perform work that allows her to elevate her ankle every two to
> four hours for at least ten minutes.

(T18). At the hearing, the vocational expert testified an individual with the Plaintiff's age, education, work experience, and RFC would be capable of performing the duties of a short order cook.[3] The ALJ accepted the vocational expert's testimony and determined that Plaintiff was capable of performing her past relevant work as a short order cook, and therefore found Plaintiff was not disabled. (T23); see 20 C.F.R. § 404.1520(a)(4)(iv)(" If you can still do your past relevant work, we will find that you are not disabled.").

Plaintiff does not appeal the ALJ's findings regarding Plaintiff's impairments or RFC formulation. (Filing No. 17 at p. 2). Instead, Plaintiff argues the ALJ erred in relying on the vocational expert's testimony regarding the duties of a short order cook because the testimony conflicts with the Dictionary of Occupational Titles ("DOT") and its companion volume, *The Selected Characteristics of Occupations* ("*SCO*"). Plaintiff contends the ALJ's RFC "limited Plaintiff to light work with . . . no exposure to hazards such as dangerous heights and machinery," but according to the *SCO*, a short order cook position requires occasional exposure to "extreme hazards." (Filing No. 17 at p. 5). Because the ALJ did not resolve this "apparent conflict" between the vocational expert's testimony and the DOT/*SCO*, Plaintiff asserts substantial evidence does not support the ALJ's decision to deny benefits and asks this court to reverse the Commissioner's final decision and remand the case for further administrative proceedings.

## STANDARD OF REVIEW

A reviewing court "will uphold the ALJ's decision to deny benefits if that decision is supported by substantial evidence in the record as a whole." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). In determining whether substantial evidence supports the ALJ's decision, the court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623

---

[3] The vocational expert also testified an individual with Plaintiff's RFC could return to her past relevant work as a housekeeping cleaner, but the ALJ found Plaintiff would be incapable of performing that past relevant work. (T23).

F.3d 599, 605 (8th Cir. 2010) (internal citation omitted). The reviewing court "may not reverse simply because [it] would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion." Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). However, the court's review is "more than a search of the record for evidence supporting the Commissioner's findings, and requires a scrutinizing analysis, not merely a 'rubber stamp'" of the Commissioner's decision. Scott ex rel. Scott v. Astrue, 529 F.3d 818, 821 (8th Cir. 2008)(internal citations omitted).

## ANALYSIS

An ALJ has a duty to identify and resolve apparent conflicts between vocational-expert testimony and the DOT's description of a job. See Stanton v. Comm'r, Soc. Sec. Admin., 899 F.3d 555, 558 (8th Cir. 2018). If an ALJ fails to do so, "the vocational expert's testimony is not substantial evidence to support a denial of benefits." Id. However, an ALJ does not have a duty to further inquire "when a [vocational expert] merely testifies to information not included in the DOT, but that does not conflict with it." Courtney v. Comm'r, Soc. Sec. Admin., 894 F.3d 1000, 1003 (8th Cir. 2018). Therefore, "unless a [vocational expert's] testimony appears to conflict with the DOT, there is no requirement that an ALJ inquire as to the precise basis for the expert's testimony regarding extra-DOT information." Id. at 1004.

Plaintiff argues the ALJ failed to resolve an apparent conflict between the vocational expert's testimony and the DOT/*SCO*. Specifically, Plaintiff contends the ALJ's RFC limited Plaintiff to "no hazards," but the *SCO* provides that a short order cook job requires occasional exposure to "Other Environmental Conditions," which include extreme hazards. Plaintiff asserts the vocational expert failed to adequately explain how Plaintiff could perform a job occasionally requiring exposure to environmental conditions when the ALJ's RFC limited her to no hazards. (Filing No. 17 at p. 6).

The vocational expert in this case testified that an individual with the Plaintiff's age, education, work experience, and RFC would be capable of performing the duties of a short order cook under DOT code 313.374-014. According to the DOT, a short order cook's duties include: preparing food and serving restaurant patrons and customers at counters or tables; taking customer orders and cooking food with short preparation time; accepting payment and making change or writing charge slips; carving meats, making sandwiches, and brewing coffee; and cleaning food

preparation equipment, work area, counters, or tables. See DOT code 313.374-014. Additionally, according to the *SCO*, the job of a short order cook requires "occasional" exposure to "Other Environmental Conditions," which encompasses conditions other than the thirteen following specified environmental conditions: (1) exposure to weather, (2) extreme cold, (3) extreme heat, (4) wet and/or humid, (5) noise intensity level, (6) vibration, (7) atmospheric conditions, (8) proximity to moving mechanical parts, (9) exposure to electrical shock, (10) working in high, exposed places, (11) exposure to radiation, (12) working with explosives, and (13) exposure to toxic, caustic chemicals. See *SCO*, Appendix D. The *SCO* does not specifically define "Other Environmental Conditions," but provides such settings "may include, but are not limited to" the following:

> demolishing parts of buildings to reach and combat fires and rescue persons endangered by fire and smoke; mining ore or coal underground; patrolling assigned beat to prevent crime or disturbance of peace and being subject to bodily injury or death from law violators; diving in ocean and being subjected to bends and other conditions associated with high water pressure and oxygen deprivation; patrolling ski slopes prior to allowing public use and being exposed to danger of avalanches.

*Id.* Although Plaintiff recognizes that a short order cook position "does not involve exposure to these precise examples," she nevertheless argues the *SCO* anticipates occasional exposure to situations "on par" with those examples. (Filing No. 17 at p. 5).

The Court finds there is no conflict between the vocational expert's testimony and the DOT/*SCO* description of a short order cook's duties. First, the *SCO* uses "Other Environmental Conditions" simply as a catch-all for any environmental condition not earlier specified, that is, any environmental condition other than exposure to weather, extreme cold/heat, wetness and/or humidity, noise intensity, vibration, atmospheric conditions, proximity to moving mechanical parts, electrical shock, working in high/exposed places, radiation, explosives, or to toxic, caustic chemicals. See *SCO*, Appendix D (providing "Other Environmental Conditions, not defined above . . . may include, *but are not limited to*" examples such as coal mining or patrolling ski slopes)(emphasis added). Therefore, "other environmental conditions" are not necessarily "extreme hazards," as suggested by Plaintiff, but instead are simply any environmental hazard not specifically defined in Appendix D.

Plaintiff testified her duties as a cook for a grocery store included cooking lunch, taking and filling orders, cleaning tables, and loading the dishwater, which largely correspond with the

DOT's description of a short order cook's duties. Plaintiff testified she felt she could not perform her past work as a cook because she needed breaks to sit and elevate her ankle—not that the job presented any hazardous conditions. See *Alcott v. Colvin*, No. 4:13-CV-01074-NK, 2014 WL 4660364, at *7 (W.D. Mo. Sept. 17, 2014) (rejecting plaintiff's argument she could not perform her past work as a deli cutter/slicer because the *SCO* provides the position required exposure to "other environmental conditions," stating, "Surely Plaintiff does not believe that performing her job as a meat cutter/slicer will require her to do any of the tasks" identified as examples in the *SCO*). Moreover, as the Commissioner points out, the ALJ's hypothetical did not preclude *any* exposure to hazards. Instead, the hypothetical individual presented to the vocational expert must avoid "moderate exposure" to hazards. (T49). Additionally, the ALJ's RFC does not eliminate Plaintiff's exposure from *all* workplace hazards, but instead restricts Plaintiff from "moderate exposure" to the particular hazards of dangerous heights and moving machinery. Limitation of exposure to those types of hazards make sense given that Plaintiff's restrictions are primarily based upon her history of left ankle impairment and surgery. The hypothetical posed by the ALJ to the vocational expert included that restriction.

For the foregoing reasons, the Court concludes there is no "apparent unresolved conflict" between the vocational expert's testimony and the DOT/*SCO*. Therefore, the ALJ did not err in relying on the vocational expert's testimony that Plaintiff could perform past relevant work as a short order cook. As this was the only error raised by Plaintiff, the Court finds that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law. Upon consideration,

**IT IS ORDERED**:
1. Defendant's Motion to Affirm Commissioner's Decision (Filing No. 18) is granted;
2. Plaintiff's Motion for Order Reversing Commissioner's Decision (Filing No. 16) is denied, and
3. A separate judgment will be entered.

Dated this 14th day of April 2020.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge